**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PALOMAR EXCESS & SURPLUS INSURANCE COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CRESCO LABS, INC., AARON BLACKKETTER RAMON DEAVILA, JOHN LEE, WINDEE PARKER, BRANDON PETERSON, ANDREW SCHMID, BRANDON NANTISTA, GAYLE O'QUINN, AMBER POLCYN, JAMES POPLIN, MICHAEL MURRAY, RUSSELL KEMP, JACOB MEDOFF, MIRZA BAIG, TONI COLEMAN, DAVID LEVY, MARTY KINDELL, ROMAN WALKER,<br><br>Defendants. | ) | No.: 1:26-cv-9856 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, PALOMAR EXCESS AND SURPLUS COMPANY, by and through its attorneys, for its Complaint for Rescission and Declaratory and Other Relief against Defendants, CRESCO LABS, INC., AARON BLACKKETTER, RAMON DEAVILA, JOHN LEE, WINDEE PARKER, BRANDON PETERSON, ANDREW SCHMID, BRANDON NANTISTA, GAYLE O'QUINN, AMBER POLCYN, JAMES POPLIN, MICHAEL MURRAY, RUSSELL KEMP, JACOB MEDOFF, MIRZA BAIG, TONI COLEMAN, DAVID LEVY, MARTY KINDELL, and ROMAN WALKER, and states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 and 28 U.S.C.A. §2201 based on diversity of citizenship between the Plaintiff and Defendants.

2. The matter in controversy in this cause exceeds $75,000. The insurance policy at issue in this matter has a limit of liability of $5 million per claim, and the underlying claimants have made a multimillion dollar demand on the Insureds.

3. Venue is proper in this district pursuant to 28 U.S.C.A. §1391 because certain events giving rise to this matter occurred in this judicial district and the Defendants are subject to the personal jurisdiction of this Court.

**PARTIES**

4. Plaintiff, Palomar Excess & Surplus Insurance Company ("Palomar") is an insurance company organized under the laws of the state of Arizona with a principal place of business in La Jolla, California. Therefore, Palomar is a citizen and resident of the states of Arizona and California.

5. Defendant Cresco Labs Inc. is a corporation organized under the laws of British Columbia, with a principal place of business in Chicago, Illinois. Therefore, Cresco Labs Inc. is a citizen and resident of both British Columbia and Illinois.

6. Defendant AARON BLACKKETTER is a citizen and resident of the state of Illinois. Blackketter is joined in this suit as a necessary party defendant.

7. Defendant, RAMON DEAVILA is a citizen and resident of the state of Illinois. Deavila is joined in this suit as a necessary party defendant.

8. Defendant, JOHN LEE is a citizen and resident of the state of Illinois. Lee is joined in this suit as a necessary party defendant.

9. Defendant, WINDEE PARKER is a citizen and resident of the state of Illinois. Parker is joined in this suit as a necessary party defendant.

10. Defendant, BRANDON PETERSON is a citizen and resident of the state of Illinois. Peterson is joined in this suit as a necessary party defendant.

11. Defendant, ANDREW SCHMID is a citizen and resident of the state of Illinois. Schmid is joined in this suit as a necessary party defendant.

12. Defendant, BRANDON NANTISTA is a citizen and resident of the state of Illinois. Nantista is joined in this suit as a necessary party defendant.

13. Defendant, GAYLE O'QUINN is a citizen and resident of the state of Illinois. O'Quinn is joined in this suit as a necessary party defendant.

14. Defendant, AMBER POLCYN is a citizen and resident of the state of Illinois. Polcyn is joined in this suit as a necessary party defendant.

15. Defendant, JAMES POPLIN is a citizen and resident of the state of Illinois. Poplin is joined in this suit as a necessary party defendant.

16. Defendant, MICHAEL MURRAY is a citizen and resident of the state of New York. Murray is joined in this suit as a necessary party defendant.

17. Defendant, RUSSELL KEMP is a citizen and resident of the state of Massachusetts. Kemp is joined in this suit as a necessary party defendant.

18. Defendant, JACOB MEDOFF is a citizen and resident of the state of Massachusetts. Medoff is joined in this suit as a necessary party defendant.

19. Defendant, MIRZA BAIG is a citizen and resident of the state of Michigan. Baig is joined in this suit as a necessary party defendant.

20. Defendant, TONI COLEMAN is a citizen and resident of the state of Michigan. Coleman is joined in this suit as a necessary party defendant.

21. Defendant, DAVID LEVY is a citizen and resident of the state of New York. Levy is joined in this suit as a necessary party defendant.

22. Defendant, MARTY KINDELL is a citizen and resident of the state of Ohio. Kindell is joined in this suit as a necessary party defendant.

23. Defendant, ROMAN WALKER is a citizen and resident of the state of Ohio. Walker is joined in this suit as a necessary party defendant.

## THE PALOMAR POLICIES

### General Liability Policy

24. Palomar issued Commercial General Liability Policy no. PEQSGL001253-00 to Cresco Labs, L.L.C., dba Sunnyside for the policy period from October 13, 2025 to October 13, 2026 ("General Liability Policy"). Cresco Labs, Inc. is an additional Named Insured under the General Liability Policy. A true and accurate copy of the General Liability Policy is attached hereto as **Exhibit A.**

### Products Liability Policy

25. Palomar issued Commercial Products Liability Policy no. PEQSPL001253-00 to Cresco Labs, L.L.C., dba Sunnyside for the policy period from October 13, 2025 to October 13, 2026 ("Products Liability Policy"). Cresco Labs, Inc. is an additional Named Insured under the Products Liability Policy. A true and accurate copy of the Products Liability Policy is attached hereto as **Exhibit B.**

## UNDERLYING CLASS ACTION LAWSUITS

### Blackketter Lawsuit

26. On May 4, 2026, Aaron Blackketter, Ramon Deavila, John Lee, Windee Parker, Brandon Peterson, Andrew Schmid, Brandon Nantista, Gayle O'Quinn, Amber Polcyn and James

Poplin (hereinafter "Blackketter Plaintiffs"), individually and behalf of all other similarly situated Illinois consumers filed a Class Action Complaint in the Circuit Court of Madison County, Illinois, civil action no. 2026LA000628 ("Blackketter Lawsuit"). The Defendants include Cresco Labs, Inc., Green Thumb Industries Inc., Verano Holdings Corp., and Verano Holdings L.L.C. A true and accurate copy of the Blackketter Lawsuit is attached hereto as **Exhibit C.**

27. The Blackketter Plaintiffs assert nine causes of action against Cresco Labs: Illinois Consumer Fraud and Deceptive Business Practices Act Violation (Count I); Negligence – Unlawful Advertising in Violation of the Illinois Cannabis Tax and Regulation Act (Count II); Common Law Fraud (Count III); Negligent Misrepresentation (Count IV); Strict Liability (Count V); Negligence (Count VI); Breach of Express Warranty (Count VII); Breach of Implied Warranty of Merchantability (Count VIII); and Unjust Enrichment (Count IX).

28. The Blackketter Plaintiffs bring the class action on behalf of all natural persons who are Illinois residents and, within the applicable limitations period, purchased in Illinois one or more cannabis products manufactured, distributed, sold, or offered for sale by Defendants from a recreational or adult-use dispensary, market, shop, store, online, or other retail platform.

29. Plaintiffs allege that Cresco Labs is a vertically integrated cannabis operator engaged in the cultivation, processing, distribution, and retail sale of cannabis and cannabis-derived products in multiple U. S. markets under various brands; that Cresco Labs does business under the trade name and brand "Sunnyside," and; that Cresco Labs controls through ownership, operation, or otherwise retail dispensaries know to consumers as "Sunnyside Dispensary." They allege that Cresco Labs controls company-wide cannabis production, policies, marketing branding, quality control, and business strategy, and is responsible for its subsidiaries' past and current production, branding, marketing and sales of cannabis products.

30. The Blackketter Plaintiffs contend that marijuana use has a causal relationship with mental health disorders such as schizophrenia and psychosis, suicidal ideation, depression, PTSD, anxiety, adverse cardiovascular events; is ineffective in treating pain; is not an effective treatment for glaucoma; causes cannabis hyperemesis syndrome; that prenatal exposure to cannabis creates risk for fetuses and children; and that cannabis is highly addictive and may cause cannabis use disorder.

31. In the Complaint, the Blackketter Plaintiffs allege that Cresco Labs (along with the other Defendants) created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions. They allege that Cresco Labs knowingly and intentionally made and disseminated untrue, false, deceptive and misleading statements to consumers that were not supported by credible scientific or medical evidence, failed to adequately disclose the facts, and failed to warn Plaintiffs and class members about the alleged risks of cannabis use.

32. Plaintiffs allege that they relied upon Cresco Labs' alleged false health, medicinal and therapeutic claims about their cannabis products, and suffered economic losses. They allege that if they knew of the risks, they either would not have purchased the products or would have paid less for them.

33. Plaintiffs allege in the Complaint that they are entitled to recover: (a) actual or compensatory damages to Plaintiffs who allegedly overpaid for the products or purchased products when they otherwise would not have done so; (b) punitive damages; (c) other statutory multiplied damages and penalties; (d) restitution on any money acquired as a result of Cresco Labs' alleged fraudulent conduct, misrepresentations and omissions; (e) disgorgement of Cresco Labs' alleged ill-gotten profits; (f) injunctive relief, including a prohibition on Defendants from making any further

misrepresentations or omission regarding the medicinal, health or therapeutic benefits of cannabis or cannabis products, and an order requiring Cresco Labs to adequately warn consumers in Illinois of the products alleged dangers; and (g) attorney's fees, costs and interest.

**Murray Lawsuit**

34. On May 4, 2026, Michael Murray, Wesley Smith, Sr., Douglas Ward, Russell Kemp, Jacob Medoff, Mirza Baig, Toni Coleman, David Levy, Marty Kindell, Roman Walker, Marcus Brown, Brandon Arrington, Ryan DeSombre, Steven Anzalone, Peter Casper, Jacqueline Muellerleile, John Williams, Michael Rosenthal, Angelina Schiedel, Ladee Samuel, Austin Schlenker, Fabian Acevedo, Nadia Dabul, Jeffrey Hahn Jr., Sebrina Hill, Ryan Ardito, Andrew Kennedy, Patricia Burrola, Payton Herbert, Elizabeth Steele, Jermaine Childs, Mark Harper, Joseph Duzy, Troy Reible, Jacqueline Ward, Michael DeLorenzo, Paolla Silviera, Chad Coble, Crystal Jenkins, Antonio Jackson and Cathryn Secor ("Murray Plaintiffs"), individually and on behalf of all others similarly situated in the states of Arizona, Massachusetts, Michigan, New York and Ohio filed a Class Action Complaint in the United States District Court for the Northern District of Illinois, civil action no. no. 26-cv-50184 ("Murray Lawsuit"). The Defendants include Cresco Labs, Inc., Green Thumb Industries Inc., Verano Holdings Corp., and Verano Holdings L.L.C. A true and accurate copy of the Murray Lawsuit is attached hereto as **Exhibit D.**

35. The Murray Plaintiffs assert claims as part of Multi-State Class, which includes all natural persons who purchased cannabis products manufactured, sold or offered for sale by Cresco Labs from a recreational or adult-use dispensary, market shop, or online or other platform. Alternatively or in addition to the Multi-State Class, the Murray Plaintiffs also bring the class action on behalf of individual State Sub-Classes, which each also include all natural persons who purchased

cannabis products manufactured, distributed, sold or offered for sale by Cresco from a recreational or adult-use dispensary, market, shop, store, or online or other retail platform.

36. The Murray Plaintiffs assert that Cresco Labs is a vertically integrated cannabis operator engaged in the cultivation, processing, distribution and retail sale of cannabis and cannabis derived products in multiple U. S. markets under various brands; that Cresco does business under the trade name and brand "Sunnyside," and that Cresco controls through ownership, operation or otherwise retail dispensaries know to consumers as "Sunnyside Dispensary." Plaintiffs further allege that Cresco Labs controls company-wide cannabis production, policies, marketing branding, quality control and business strategy, and is responsible for its subsidiaries past and current production, branding, marketing and sales of cannabis products.

37. The Murray Plaintiffs contend that cannabis use has a causal relationship with mental health disorders such as schizophrenia and psychosis; suicidal ideation; depression; PTSD; anxiety; adverse cardiovascular events; is ineffective in treating pain; is not an effective treatment for glaucoma; causes cannabis hyperemesis syndrome; that prenatal exposure to cannabis creates risk for fetuses and children; and that cannabis is highly addictive and may cause cannabis use disorder.

38. In the Complaint, the Murray Plaintiffs allege that Cresco Labs (along with the other Defendants) created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions. They allege that Cresco knowingly and intentionally made and disseminated untrue, false, deceptive and misleading statements to consumers that were not supported by credible scientific or medical evidence, failed to adequately disclose the facts, and failed to warn Plaintiffs and class members about the alleged risks of cannabis use.

39. Plaintiffs allege that they relied upon Cresco Lab's alleged false health, medicinal and therapeutic claims about their cannabis products, and suffered economic losses. They allege that if they knew of the risks, they either would not have purchased the products or would have paid less for them.

40. The Murray Plaintiffs assert ten Multi-State Class causes of action against Cresco Labs including: RICO Violation (Count I); Illinois Consumer Fraud and Deceptive Business Practices Violation (Count II); Negligence – Unlawful Advertising in Violation of the Illinois Cannabis Tax and Regulation Act, 410 ILCS 705/55-20 (Count III); Negligent Misrepresentation (Count IV); Strict Liability (Count V); Negligence (Count VI); Breach of Express Warranty (Count VII); Breach of Implied Warranty of Merchantability (Count VIII); Common Law Fraud (Count IX); and Unjust Enrichment (Count X).

41. The Murray Plaintiffs assert causes of action against Cresco Labs on behalf of the Arizona State Sub- Class which include: Consumer Fraud Act Violation (Count I); Arizona Breach of Express Warranty (Count II); Arizona Breach of Implied Warranty of Merchantability (Count III); Arizona Common Law Fraud (Count IV); and Arizona Unjust Enrichment (Count V).

42. The Murray Plaintiffs assert causes of action against Cresco Labs on behalf of the Massachusetts State Sub-Class which include: Violations of Massachusetts Consumer Protection Act (Count I); Massachusetts Negligent Misrepresentation (Count I); Massachusetts Negligence (Count III); Massachusetts Breach of Express Warranty (Count IV); Massachusetts Breach of Implied Warranty of Merchantability (Count V); Massachusetts Breach of Implied Warranty of Fitness for a Particular Purpose (Count VI); Massachusetts Common Law Fraud (Count VII); and Massachusetts Unjust Enrichment (Count VIII).

43. The Murray Plaintiffs assert causes of action against Cresco Labs on behalf of the Michigan Sub-Class which include Michigan Consumer Protection Act Violations (Count I); Innocent Misrepresentation (Count II); Michigan Negligence (Count III); Michigan Breach of Express Warranty (Count IV); Michigan Breach of Implied Warranty of Merchantability (Count V); Michigan Common Law Fraud (Count VI); and Michigan Unjust Enrichment (Count VII).

44. The Murray Plaintiffs assert causes of action against Cresco Labs on behalf of the New York sub-class which include: New York General Business Law § 349 Violation (Count I); New York General Business Law § 350 Violation (Count II); New York Negligent Misrepresentation (Count III); New York Breach of Express Warranty (Count IV); New York Breach of Implied Warranty of Merchantability (Count V); New York Common Law Fraud (Count VI); and New York Unjust Enrichment (Count VII).

45. The Murray Plaintiffs assert causes of action against Cresco Labs on behalf of the Ohio sub-class which include: Violation of the Ohio Consumers Sales Practices Act (Count I), Violation of the Ohio Deceptive Practices Act (Count II), Ohio Negligent Misrepresentation (Count III), Breach of Express Warranty (Count IV), Breach of Implied Warranty of Merchantability (Count V), Ohio Common Law Fraud (Count VI), and Ohio Unjust Enrichment (Count VII).

46. The Murray Plaintiffs allege in the Complaint that they are entitled to recover: (a) actual or compensatory damages to Plaintiffs who allegedly overpaid for the products or purchased products when they otherwise would not have done so; (b) punitive damages; (c) treble damages; (d) other statutory multiplied damages and penalties; (e) restitution on any money acquired as a result of Cresco Labs' alleged fraudulent conduct, misrepresentations and omissions; (f) disgorgement of Cresco Labs' alleged ill-gotten profits; (g) injunctive relief including a prohibition on Defendants from making any further misrepresentations or omission regarding the medicinal,

health or therapeutic benefits of cannabis or cannabis products, and an order requiring Cresco to adequately warn consumers in Illinois of the products alleged dangers; and (h) attorney's fees, costs and interest.

47. Palomar contends it has no obligation to Cresco Labs, Inc. against the Blackketter or Murray Lawsuit. Cresco Labs contends that Palomar has an obligation to defend and indemnify it against the lawsuits. As a result, a present justiciable controversy exists regarding Palomar's rights and obligations, if any, with regard to these claims.

## COUNT I

## DECLARATORY JUDGMENT - INSURING AGREEMENT (PALOMAR GENERAL LIABILITY POLICY)

48. Palomar adopts and incorporates by reference paragraphs 1- 47 as though set forth herein as this paragraph 48.

49. The Insuring Agreement of the Commercial General Liability Coverage Form provides, in pertinent part, as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "claim" or "suit" seeking those damages. However, we will have no duty to defend the insured against any "claim" or "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

* * *

**b.** This insurance applies "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an

"occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

50. "Bodily injury" is defined in **SECTION V- DEFINITIONS** as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

51. "Property damage" is defined to include:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

52. "Occurrence" is defined as "an event or accident causing or leading to 'bodily injury', 'property damage' or 'personal and advertising injury,' including continuous or repeated exposure to substantially the same general harmful conditions."

53. The Insuring Agreement of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** of the Palomar General Liability states:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "claim" or "suit" seeking those damages. However, we will have no duty to defend the insured against any "claim" or "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . .

* * *

54. "Personal and Advertising Injury" is defined in **SECTION V – DEFINITIONS** to include injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

55. Neither the Blackketter Plaintiffs nor the Murray Plaintiffs seek damages because of any bodily injury, sickness or disease suffered by the Plaintiffs.

56. Neither the Blackketter Plaintiffs nor the Murray Plaintiffs seek damages because of any physical injury to tangible property of the Plaintiffs.

57. Neither the Blackketter Plaintiffs nor the Murray Plaintiffs seeks damages because of any "personal and advertising" offense delineated in the General Liability Policy.

58. Neither the Blackketter Lawsuit nor the Murray Lawsuit alleges an event or accident causing or leading to "bodily injury," "property damage," or "personal and advertising injury," as those terms are defined in the General Liability Policy.

59. The Blackketter Lawsuit is outside the scope of coverage provided by the General Liability Policy because the Blackketter Plaintiffs do not allege "bodily injury," "property damage," or "personal and advertising injury" caused by an "occurrence," as required to invoke coverage under the General Liability Policy. Therefore, Palomar has no obligation to defend or indemnify any Insured against the Blackketter Lawsuit.

60. The Murray Lawsuit is outside the scope of coverage provided by the General Liability Policy because the Murray Plaintiffs do not allege "bodily injury," "property damage," or

"personal and advertising injury" caused by an "occurrence," as required to invoke coverage under the General Liability Policy. Therefore, Palomar has no obligation to defend or indemnify any Insured against the Murray Lawsuit.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

**COUNT II**

**DECLARATORY JUDGMENT - SCOPE OF DAMAGES**
**(GENERAL LIABILITY POLICY)**

61. Palomar adopts and incorporates by reference paragraphs 1- 60 as though set forth herein as this paragraph 61.

62. The Insuring Agreement of the Palomar General Liability Policy provides coverage only for those amounts the Insured becomes legally obligated to pay as "damages" as a result of a covered claim.

63. In the Blackketter Lawsuit, Plaintiffs seek restitution, disgorgement of alleged ill-gotten profits, multiplied damages, punitive damages, penalties, and injunctive relief.

64. In the Murray Lawsuit, Plaintiffs seek restitution, disgorgement of alleged ill-gotten profits, punitive damages, multiplied damages, treble damages, penalties and injunctive relief.

65. Accordingly, even assuming the Blackketter or Murray Lawsuits were otherwise within the scope of the Insuring Agreement, Palomar has no obligation to defend or indemnify Cresco Labs for restitution, disgorgement, non-monetary relief, penalties, fines or any amounts that Cresco Labs is not legally obligated to pay as damages as a result of a covered claim.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

**COUNT III**

**EXPECTED OR INTENDED EXCLUSION**
**(GENERAL LIABILITY POLICY)**

66. Palomar adopts and incorporates by reference paragraphs 1- 65 as though set forth herein as this paragraph 66.

67. Exclusion a. of the General Liability Policy states that the insurance does not apply to:

> "Bodily injury," "property damage," or "personal and advertising injury" expected or intended by any insured, or any insured's "employee", contractors, or agents.

68. The Blackketter Plaintiffs and the Murray Plaintiffs allege that Cresco Labs created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions, and that Cresco knowingly and intentionally made and disseminated untrue, false, deceptive and misleading statements to consumers that were not supported by credible scientific or medical evidence, and concealed facts from consumers.

69. Accordingly, even if the Blackketter or Murray Lawsuits were otherwise within the scope of the Insuring Agreement, all or part of the claims asserted in the Lawsuits are excluded by Exclusion 2.a.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or

the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

**COUNT IV**

**CANNABIS LIABILITY EXCLUSION**
**(GENERAL LIABILITY POLICY)**

70. Palomar adopts and incorporates by reference paragraphs 1- 69 as though set forth herein as this paragraph 70.

71. The General Liability Policy contains Exclusion c. which states that the insurance does not apply to:

> **s. Cannabis Liability**
>
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the cannabinoid intoxication of any person;
> (2) The furnishing of cannabis or cannabis containing products to any person; or
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of cannabis or cannabis containing products.

* * *

72. The Blackketter Plaintiffs and the Murray Plaintiffs allege that Cresco Labs violated multiple statutes, ordinances and/or regulations related to the sale and distribution of cannabis or cannabis containing products.

73. Accordingly, even if the Blackketter or Murray Lawsuits were otherwise within the scope of the Insuring Agreement, all or part of the claims asserted in the Lawsuits are excluded by even if the claim were otherwise within the scope of the Insuring Agreement, the claims are excluded in whole or in part by Exclusion s.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

**COUNT V**

**RULE OF LAW EXCLUSION**
**(GENERAL LIABILITY POLICY)**

74. Palomar adopts and incorporates by reference paragraphs 1- 73 as though set forth herein as this paragraph 74.

75. Exclusion 9 of the General Liability Policy provides that the insurance does not apply to, and there is no coverage, indemnity or duty to defend against any claim, cause of action, allegation, suit, demand, "bodily injury," "property damage" or "personal and advertising injury" for:

> 9. EXCLUSION – RULE OF LAW
>
> 1) Any criminal act or offense, brought by indictment, complaint or information or otherwise, regarding a breach of any applicable tribal, military, federal, state or local laws, statutes, rules, regulations, ordinances, licensing requirements or restrictions governing the "cultivation," "extraction," "distribution," "manufacture," "sale," use or possession of any "cannabis" or "cannabis" byproduct or derivative, including but not limited to Racketeer Influenced and Corrupt Organizations Act or Controlled Substances Act.
>
> 2) Any civil claim or complaint containing a cause or causes of action, whether criminal or civil in nature, regarding the "cultivation," "extraction," "distribution," "manufacture," "sale," use or possession of any "cannabis" or "cannabis" byproduct or derivative, related to Racketeer Influenced and Corrupt Organizations Act or Controlled Substances Act.

76. The Murray Plaintiffs assert causes of action against Cresco Labs, Inc. related to the Racketeer Influenced and Corrupt Organizations Act. Accordingly, even if the Murray Lawsuit

were otherwise within the scope of the Insuring Agreement, the RICO claim is excluded by Exclusion 9 and Palomar can have no obligation to defend or Indemnify Cresco Labs against such claims.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT VI

### PUNITIVE DAMAGES EXCLUSION
### (GENERAL LIABILITY POLICY)

77. Palomar adopts and incorporates by reference paragraphs 1- 76 as though set forth herein as this paragraph 77.

78. Pursuant to Exclusion 13 of the General Liability Policy, the Policy does not apply to:

EXCLUSION 13 – PUNITIVE DAMAGES

1) Punitive or exemplary damages; or
2) Fines; or
3) Penalties; or
4. Treble damages; or
5) Multiplied or multiple damages; imposed upon any "insured" including any defense or legal expenses incurred as a result of items 1.2.3.4.or 5. above.

79. In the Blackketter and Murray Lawsuits, Plaintiffs seek restitution, disgorgement of alleged ill-gotten profits, punitive damages, multiplied damages, treble damages, and statutory fines and penalties.

80. Accordingly, even assuming the Blackketter or Murray Lawsuits were otherwise within the scope of the Insuring Agreement, Palomar has no obligation to defend or indemnify

Cresco Labs for punitive damages, statutory fines and penalties, treble damages, multiplied damages, and/or disgorgement, which are excluded by Exclusion 13 and uninsurable as a matter of Illinois public policy.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT VII

## PRODUCTS LIABILITY EXCLUSION (GENERAL LIABILITY POLICY)

81. Palomar adopts and incorporates by reference paragraphs 1-80 as though set forth herein as this paragraph 81.

82. Pursuant to Exclusion r of the Palomar General Liability Policy, the Policy does not apply to:

> **r. Products-completed operations hazard**
>
> "Bodily injury" or "property damage" included within the "products completed operations hazard."

83. "Products-completed operations hazard" is defined in **SECTION V-DEFINITIONS**, in pertinent part, to:

> a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products. . .
>
> * * *

84. "Your product" is defined, in relevant part, to include:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You; . . .

* * *

85. The Blackketter Plaintiffs and Murray Plaintiffs allege that Cresco Labs misrepresented the safety and benefits of their products and breach of express and implied warranties with respect to its products.

86. Accordingly, even assuming that the claims were otherwise within the scope of the Insuring Agreement, and that Plaintiffs alleged "bodily injury" or "property damage" that occurred after Cresco Labs relinquished possession of its products, such claims are excluded by Exclusion r.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT VIII

## DECLARATORY JUDGMENT - INSURING AGREEMENT (PALOMAR PRODUCTS LIABILITY POLICY)

87. Palomar adopts and incorporates by reference paragraphs 1-86 as though set forth herein as this paragraph 87.

88. The Insuring Agreement of the Palomar Products Liability provides, in pertinent part, as follows:

**SECTION I - COVERAGES**

**PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as a result of "claims" for damages because of "bodily injury" or "property damage" included within the "products-completed operations hazard" to which this insurance applies, provided that the "claim" is first made against and received by the insured during the Period of Insurance and reported to us in writing as soon as practicable during the period of Insurance or during any Extended Reporting Period.

**b.** We will have the right and duty to defend the insured against any "claim" or "suit" seeking covered damages. However, we will have no duty to defend the insured against any "claim" or "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

* * *

89. "Bodily injury" is defined in **SECTION V-DEFINITIONS** as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

90. "Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

91. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

92. "Products-completed operations hazard" is defined to include:

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

* * *

93. "Your product" is defined, in relevant part, as :

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You; . . .

94. The Blackketter Lawsuit is outside the scope of coverage provided by the Products Liability Policy because the Blackketter Plaintiffs do not allege "bodily injury" or "property damage" caused by an "occurrence," as required to invoke coverage under the Products Liability Policy. Therefore, Palomar has no obligation to defend or indemnify any Insured against the Blackketter Lawsuit.

95. The Murray Lawsuit is outside the scope of coverage provided by the Products Liability Policy because the Murray Plaintiffs do not allege "bodily injury" or "property damage" caused by an "occurrence," as required to invoke coverage under the Products Liability Policy. Therefore, Palomar has no obligation to defend or indemnify any Insured against the Murray Lawsuit.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT IX

### DECLARATORY JUDGMENT - SCOPE OF DAMAGES (PRODUCTS LIABILITY POLICY)

96. Palomar adopts and incorporates by reference paragraphs 1- 95 as though set forth herein as this paragraph 96.

97. The Insuring Agreement of the Palomar Products Liability Policy provides coverage only for those amounts the Insured becomes legally obligated to pay as "damages" as a result of a covered claim.

98. In the Blackketter Lawsuit, Plaintiffs seek restitution, disgorgement of alleged ill-gotten profits, multiplied damages, punitive damages, penalties, and injunctive relief.

99. In the Murray Lawsuit, Plaintiffs seek restitution, disgorgement of alleged ill-gotten profits, punitive damages, multiplied damages, treble damages, penalties and injunctive relief.

100. Even assuming the Blackketter or Murray Lawsuits were within the scope of coverage, Palomar has no obligation to defend or indemnify Cresco Labs for restitution, disgorgement, non-monetary relief, penalties, fines or any amounts that Cresco Labs is not legally obligated to pay as damages as a result of a covered claim.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT X

## EXPECTED OR INTENDED EXCLUSION
## (PRODUCTS LIABILITY POLICY)

101. Palomar adopts and incorporates by reference paragraphs 1- 100 as though set forth herein as this paragraph 101.

102. Pursuant to Exclusion 2.a. of the Products Liability Policy, the Policy does not apply to:

a. Expected or Intended Injury

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . .

103. The Blackketter Plaintiffs and the Murray Plaintiffs allege that Cresco Labs created and implemented a scheme to create and increase the market for cannabis and substantially increase sales of cannabis products through a pervasive pattern of false and misleading statements and omissions, and that Cresco knowingly and intentionally made and disseminated untrue, false, deceptive and misleading statements to consumers that were not supported by credible scientific or medical evidence, and concealed facts from consumers.

104. Accordingly, even if the Blackketter or Murray Lawsuits were within the scope of coverage provided by the General Liability Policy, all or part of the claims are excluded by exclusion 2.a.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT XI

### PUNITIVE DAMAGES EXCLUSION
### (PRODUCTS LIABILITY POLICY)

105. Palomar adopts and incorporates by reference paragraphs 1- 104 as though set forth herein as this paragraph 105.

106. Pursuant to Exclusion 2.p of the Products Liability Policy, the Policy does not apply to

> **p. Punitive Damages**

> Any claim for punitive or exemplary damages, or Damages which are a multiple of compensatory Damages, fines, sanctions, taxes or penalties, or the return of or reimbursement for fees, costs or expenses charged by any Insured;

107. In the Blackketter and Murray Lawsuits, Plaintiffs seek restitution, disgorgement of alleged ill-gotten profits, punitive damages, multiplied damages, treble damages, and statutory fines and penalties.

108. Even assuming the Blackketter or Murray Lawsuits were otherwise within the scope of the Insuring Agreement, Palomar has no obligation to defend or indemnify Cresco Labs for punitive damages, statutory fines and penalties, treble damages, multiplied damages, and/or disgorgement, which are excluded by Exclusion 2.p, and are uninsurable as a matter of Illinois public policy.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT XII

## RICO EXCLUSION
## (PRODUCTS LIABILITY POLICY)

109. Palomar adopts and incorporates by reference paragraphs 1-108 as though set forth herein as this paragraph 109.

110. Pursuant to Exclusion 2.q. of the Products Liability Policy, the Policy does not apply:

> **q. RICO**
>
> To any "claim" for or arising out of any actual or alleged violation of the Racketeer

> influenced and Corrupt Organizations Act, 18 U.S.C. §1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder.

111. The Murray Plaintiffs assert causes of action against Cresco Labs, Inc. related to the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Accordingly, even if the Murray Lawsuit were otherwise within the scope of the Insuring Agreement, the RICO claim and any other claim arising out any actual or alleged violation of RICO is excluded by Exclusion 2.q., and Palomar can have no obligation to defend or Indemnify Cresco Labs against such claims.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT XIII

### KNOWING VIOLATION EXCLUSION (PRODUCTS LIABILITY POLICY)

112. Palomar adopts and incorporates by reference paragraphs 1-111 as though set forth herein as this paragraph 112.

113. Pursuant to Exclusion 2.f of the Products Liability Policy, the Policy does not apply to:

> **t. Knowing Violations of State Law**
>
> To any Claim arising out of any Named Insured's Products manufactured, handled, sold, developed, designed, created, tested, leased, licensed, rented, marketed, disposed of, or distributed in knowing or willful violation of any State law, statute, ordinance or regulation.

114. The Blackketter Plaintiffs and the Murray Plaintiffs allege that Cresco Labs sold and marketed its products in knowing and/or willful violation of multiple state laws, ordinances and/or

regulations. Accordingly, even if the claims were otherwise within the scope of the Insuring Agreement, the claims are excluded in whole or in part by Exclusion 2.f and Palomar can have no obligation to defend or Indemnify any Insured against such claims.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Defendant Cresco Labs, Inc. against the Blackketter Lawsuit or the Murray Lawsuit, and grant such other and further relief as this Court deems just and proper, including fees and costs.

Dated: August __, 2026

Respectfully submitted,

PALOMAR EXCESS & SURPLUS INSURANCE COMPANY

By: ____________________________
Attorney for Plaintiff

Michelle M. Bracke – ARDC No. 6224533
Agne Ribikauskaite – ARDC No. 6346469
LEAHY EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel.: (312) 368-4554
Fax: (312) 368-4562
Email: mmb@lefltd.com
ar@lefltd.com